UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDE BONNEAU,<br><br>                            Petitioner,<br><br>      - against -<br><br>JAMIE LAMANNA,<br><br>                            Respondent. | 18 Civ. 2228 (CS) (AEK)<br><br>**REPORT AND RECOMMENDATION** |

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J**[1]

      Currently before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by *pro se* Petitioner Jude Bonneau ("Petitioner"), challenging his judgment of conviction, following a guilty plea, for the crime of attempted burglary in the second degree. ECF No. 1 ("Petition") ¶ 5.[2] The Petition sets forth two purported grounds for habeas relief: (1) the trial court erred in denying Petitioner's motion to withdraw his guilty plea because Petitioner was coerced into entering the plea; and (2) Petitioner's counsel was ineffective because he pressured Petitioner into entering the guilty plea. Petition ¶ 12.

      For the reasons that follow, I respectfully recommend that the Petition be DISMISSED WITHOUT PREJUDICE.

---

[1] This matter originally was referred to the Honorable Lisa Margaret Smith on April 12, 2018. ECF No. 7. It was reassigned to the undersigned on October 17, 2020.

[2] Petitioner originally was charged via indictment with two counts of burglary in the second degree. ECF No. 13 ( "Resp. Mem. in Opp'n") at 1; ECF No. 14 (State Court Record ("SCR")) 036-039.

## BACKGROUND

**I.     The Plea**

On October 31, 2014, prior to the start of a pre-trial hearing, the court[3] granted defense counsel's request to allow Petitioner to consult with his family off the record in the courtroom, while defense counsel was present. SCR 036. According to the transcript of the proceedings, the prosecutor left the courtroom to allow them some privacy, and the judge stayed on the bench. *Id.* Petitioner consulted with counsel during this time as well. *Id.* Following these consultations, the judge sought to confirm whether a proposed disposition had been reached. SCR 037. The prosecutor explained that on the condition that Petitioner enter a guilty plea to the second count of the indictment, the prosecution would move to reduce that count from burglary in the second degree to attempted burglary in the second degree, and would recommend a reduced sentence of 12 years to life imprisonment. SCR 037-038. Defense counsel stated that Petitioner offered to plead guilty to the amended second count of the indictment, with the "understanding . . . that the Court would commit itself to a sentence of 12 years to life . . . ." SCR 039. The court stated that this sentence would be the minimum sentence that could be imposed on Petitioner, who qualified as a persistent violent felony offender based on his previous convictions for burglary in the second degree in 2006 and assault in the second degree in 2003. SCR 039-040. Petitioner conceded the previous convictions and the constitutionality of

---

[3] The cover page of the transcript of the October 31, 2014 hearing indicates that the hearing was conducted before the Honorable William K. Nelson, Judge of the County Court of Rockland County. SCR 035. Other portions of the State Court Record, however, indicate that the October 31, 2014 hearing was conducted before the Honorable William A. Kelly, a New York State Supreme Court Justice sitting in Rockland County. *See* ECF No. 15 ("Sentencing Tr.") at 7-10 (ECF pgs. 82-85) (in which Justice Kelly speaks in the first person about how he conducted the plea allocution proceeding). It appears likely that the reference to Judge Nelson on the cover page of the October 31, 2014 transcript is an error. To avoid any potential confusion, in discussing the October 31, 2014 proceeding, this Report and Recommendation will refer to the judicial officer who conducted that proceeding only as "the judge" or "the court."

those convictions, and the judge stated that he "would be sentencing [Petitioner] as a persistent violent felony offender . . . ." SCR 040. Petitioner acknowledged that he understood that he would be withdrawing his plea of not guilty and would be entering a plea of guilty to the class D violent felony offense of attempted burglary in the second degree. SCR 041-042.

After being placed under oath, Petitioner stated that he had had the opportunity to speak with his counsel and his family members before deciding to enter his guilty plea. SCR 044-045. The judge explained to Petitioner certain rights that he would be waiving by entering a guilty plea, including the right to remain silent; the right to a trial, with or without a jury, at which the prosecution would have the burden to prove Petitioner's guilt beyond a reasonable doubt; the right to testify at trial; and the rights to be present at trial to see and hear witnesses against him, to have his counsel cross-examine those witnesses, and to call witnesses of his own. SCR 045-046. Petitioner said that he understood that by pleading guilty, he was waiving those rights. SCR 046. The court explained that the prosecution was recommending a sentence of 12 years to life imprisonment for Petitioner's plea of guilty to attempted burglary in the second degree, and that this represented a reduction of what the minimum sentence would have been had Petitioner been convicted of burglary in the second degree, the crime originally charged in the second count of the indictment. SCR 047. Petitioner confirmed that he understood the sentencing recommendation. *Id.*

In response to a question from the judge, Petitioner admitted that he committed the crime of attempted burglary in the second degree in that on July 14, 2014, in Rockland County, he attempted to enter and unlawfully remain inside a dwelling at 5 Laura Drive, Airmont, New York, with intent to commit a crime inside that dwelling. *Id.* When the prosecutor posed additional questions to Petitioner as part of the allocution process, Petitioner admitted that he did

3

not have permission or authority to be in the house, but he denied that he had broken a window to enter the house; instead, Petitioner asserted that he entered the house through a door.  SCR 048.  After some brief additional exchanges between the prosecutor and Petitioner about why he was at the Laura Drive house, including a claim by Petitioner that an individual inside the house owed him money, the judge stated that he would not accept Petitioner's guilty plea and asked the prosecutor to describe what he believed the evidence would show.  SCR 049-050.

According to the prosecutor, he was prepared to present evidence that Petitioner cut through a screen and broke the back window of the house, climbed into the house without permission or authority, and was confronted by a young man inside the house.  SCR 050.  The prosecutor also represented that the evidence would show that Petitioner demanded money from the young man inside the house, and that when the young man said he had no money, Petitioner left the residence and was arrested approximately two houses away by the police.  *Id.*  At that point in the hearing, the judge explained to Petitioner that unless he admitted his guilt—*i.e.*, that he entered the house with the intent to commit a crime and that he had no consent or permission to be there—the court would not accept his plea, and Petitioner would have to proceed to trial.  *Id.*  When Petitioner admitted only that he "asked for money" from the young man in the house, the judge refused to accept the plea and ordered that the pre-trial hearing proceed.  SCR 051-053.

After the first witness began to testify, and as the prosecutor started to play a videotape of Petitioner's interview with the police on the night of the crime, Petitioner's counsel informed the court that Petitioner was ready again to attempt an allocution.  SCR 054-061.  The judge warned that if Petitioner did not provide a proper allocution and fully admit his guilt, then he would not accept Petitioner's plea, and the case would proceed to trial the following week.  SCR 061-062.  At that point the prosecutor asked Petitioner if he was "pleading guilty to attempted burglary in

the second degree because [he was], in fact, guilty of that crime," to which Petitioner responded, "Yes." SCR 062. Petitioner admitted that on July 14, 2014, he entered a house at 5 Laura Drive, Airmont, New York through a broken window, without permission or authority to be in that house, and that he confronted a young man in the house and demanded money from him. SCR 062-063. The prosecutor stated that he was satisfied with Petitioner's plea. SCR 063. Near the conclusion of the colloquy, the judge stated: "So the story you started to give before was not true. This is the truth." Petitioner responded, "Yes, your Honor." SCR 063-064.

The judge then reiterated that Petitioner was pleading guilty to the charge in the revised second count of the indictment—attempted burglary in the second degree; that the prosecution was recommending a sentence of 12 years to life imprisonment; and that Petitioner was waiving various rights in connection with entering his guilty plea, which the judge once again summarized. SCR 064-065. Petitioner confirmed again that he was "waiving or giving up those rights voluntarily through [his] own will and accord." SCR 065. The court proceeded to review an appellate waiver form, which, as the judge explained, was a document in which Petitioner would acknowledge in writing that he would be "giving up the right to appeal that [he] otherwise would have." SCR 065-066. The court further specified that the appellate waiver represented a "quid pro quo"—*i.e.*, that Petitioner would waive his right to appeal in exchange for the prosecution reducing the charge in the second count of the indictment from burglary in the second degree to attempted burglary in the second degree, and recommending a sentence of 12 years to life imprisonment as opposed to a greater sentence. SCR 066. After confirming Petitioner's understanding of the appellate waiver, the court found that Petitioner had "knowingly and voluntarily executed the waiver of right to appeal after discussing it with his attorney, [and] telling the Court that he understood it[.]" SCR 065-067. Petitioner also

5

acknowledged that in exchange for his guilty plea he was giving up the right to proceed with any of the pre-trial hearings that he had sought and been granted. SCR 067-068. The court accepted the plea, set a date for sentencing, and confirmed with Petitioner that the sentence he would receive would be 12 years to life imprisonment. SCR 068-069.

## II.     Petitioner's Motion to Withdraw the Guilty Plea

Prior to sentencing, Petitioner, proceeding *pro se*, filed a motion to withdraw his guilty plea. SCR 001-003. The motion raised three main arguments: (1) Petitioner was not afforded a hearing to determine if he would be adjudicated as a persistent violent felony offender; (2) the judge who was slated to sentence Petitioner should have recused himself because the same judge had presided over a prior criminal case involving Petitioner; and (3) a criminal defendant in an unrelated case received a lesser sentence than Petitioner. *Id.* The prosecutor opposed Petitioner's motion to withdraw the plea, noting that none of Petitioner's claims challenged the voluntariness of the plea. SCR 005-011.

On March 18, 2015, Justice Kelly issued a written decision denying Petitioner's motion to withdraw the guilty plea. SCR 073-075. The court noted that Petitioner had been advised of his rights and the consequences of waiving those rights, and also addressed Petitioner's arguments, explaining that they were not legal justifications for the court to grant the motion to withdraw the guilty plea. SCR 073-074.

## III.    The Sentencing

At Petitioner's sentencing proceeding, Justice Kelly noted that he had issued a written decision denying Petitioner's motion to withdraw his plea and that he had found that the plea "was knowing, voluntary, and intelligent"; he then provided further explanation of the decision. Sentencing Tr. at 3-5. Petitioner argued that he pled guilty because his counsel "coerced me in

front of everybody, in front of the Court." *Id.* at 7.  He added that his counsel asked his wife to persuade Petitioner to take the plea and that the judge "allowed that." *Id.*  In rejecting Petitioner's challenge to the plea, the court reviewed what had transpired on the record at the plea hearing, citing to pages of the plea transcript. *Id.* at 7-11.  Justice Kelly then proceeded to sentence Petitioner, noting first that he had "allocuted [Petitioner] on the persistent violent felony offender statement as well . . . and [Petitioner] admitted he was the person who was convicted of those felonies . . . ." *Id.* at 11; *see also id.* at 13-14.  As discussed during Petitioner's plea allocution, Justice Kelly sentenced Petitioner, as a persistent violent felony offender, to a term of 12 years to life imprisonment. *Id.* at 14-16.

### IV.     Petitioner's Direct Appeal

Petitioner, proceeding through counsel, directly appealed his judgment of conviction.  SCR 076-089.  On appeal, Petitioner maintained that the trial court erred in denying the motion to withdraw his plea as involuntary because (1) his plea was coerced, and (2) his counsel provided ineffective assistance because counsel pressured him, both directly and through Petitioner's family members, to accept the plea offer.  SCR 085-087.  The Appellate Division, Second Department affirmed Petitioner's conviction on February 22, 2017.  *People v. Bonneau*, 147 A.D.3d 1076 (2d Dep't 2017).  The court explained that

> [t]he defendant's contention that his plea was involuntary because of coercion and ineffective assistance of counsel is based, in part, on matter appearing on the record and, in part, on matter outside the record.  In this case, it is not evident from the matter appearing on the record that the defendant was coerced or deprived of the effective assistance of counsel.  Since the defendant's claims of coercion and ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a [New York Criminal Procedure Law ("CPL")] 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety.

*Id.* at 1076 (citations omitted).

Petitioner thereafter filed an application for leave to appeal to the New York Court of Appeals.  Petition ¶ 9(g); SCR 116 (prosecution's response to Petitioner's leave application).[4]  The Court of Appeals denied leave to appeal on July 26, 2017.  *People v. Bonneau*, 29 N.Y.3d 1090 (2017).

## V.     The Instant Petition

On March 6, 2018, Petitioner filed the Petition,[5] raising the same grounds for relief that he raised in his brief on direct appeal.  *See* Petition ¶ 12.  Respondent filed his opposition papers on July 20, 2018.  ECF Nos. 12-15.  Petitioner has not filed any papers in reply.

## DISCUSSION

## I.     Standard of Review

"Habeas review is an extraordinary remedy."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C § 2254.  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas

---

[4] Respondent was "unable to obtain a copy of petitioner's leave application," Resp. Mem. in Opp'n at 8 n.1, so the State Court Record includes only a copy of the prosecution's submission to the New York Court of Appeals.

[5] Under the prison mailbox rule, the Court deems the Petition filed on the date on which it was delivered to prison authorities for mailing.  *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).  Here, Petitioner signed, but did not date, the Petition; however, the postmark on the envelope is dated "03/06/2018," Petition at 17.  Accordingly, the Court deems the Petition to have been filed as of that date.

corpus on behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C § 2254(d).

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time," and the petitioner "acted with reasonable diligence throughout the period he [or she] seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). There is no dispute here that the Petition was timely filed.

Under AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). "This requires that the prisoner 'fairly present' his [or her] constitutional claim to the state courts, which he [or she] accomplishes by presenting the essential factual and legal premises of his [or her] federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (quotation marks omitted). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's

9

federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).

Even where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it.  *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Coleman*, 501 U.S. at 730*; Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  A state court decision is "independent" when it "fairly appears" to rest primarily on state law.  *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740).  A decision is "adequate" if it is "'firmly established and regularly followed' by the state in question."  *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

**II.     Petitioner Has Failed to Exhaust His State Court Remedies**

Petitioner's two grounds for habeas relief are the same claims that he raised on direct appeal, *i.e.*, (1) the trial court erred in denying Petitioner's motion to withdraw his plea because his plea was coerced, and (2) his counsel provided ineffective assistance because counsel pressured him, both directly and through Petitioner's family members, to take the plea.  Petition ¶ 12.  As noted above, the Appellate Division, Second Department stated that "[s]ince the defendant's claims of coercion and ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety."  *Bonneau*, 147 A.D.3d at 1076 (citations omitted).  Petitioner has failed, however, to raise either of his habeas claims in a § 440.10 motion to vacate the judgment.

Petitioner filed a letter motion, docketed on October 12, 2018, seeking to stay this habeas proceeding so that he could bring a § 440.10 motion in state court, but the contemplated § 440.10 motion—a copy of which was attached to the letter motion—claimed that Petitioner's guilty plea was "involuntary [*sic*] taken due to ineffective assistance of trial counsel" based on trial counsel allowing Petitioner to enter a guilty plea while Petitioner was under the influence of prescription medication.  ECF No. 16.  Respondent opposed the motion, ECF No. 17, and on November 20, 2018, Magistrate Judge Smith issued an order denying the motion, finding that "granting the stay would serve no purpose, because the claim asserted in the proposed CPL 440.10 motion is different from the claim asserted in the habeas petition, therefore granting a stay to allow a decision on the 440.10 motion would not result in exhaustion of any claim currently pending in the habeas petition."  ECF No. 18.  The Court is not aware of any other § 440.10 motions having been filed by Petitioner.[6]

To exhaust state court remedies for federal habeas purposes, a petitioner "must have fairly presented to an appropriate state court the same federal constitutional claim that he [or she] now urges upon the federal courts," and "must also have employed the proper state-law procedural vehicle so that the state courts are afforded an opportunity to review his [or her] claims."  *Perez v. Conway*, No. 09-cv-5173, 2011 WL 1044607, at *2-3 (S.D.N.Y. Mar. 18,

---

[6] The Petition states that "[a] motion to Art. 440 is in development in order to amend this habeas corpus with this exhausted issue/ground."  Petition at 8.  It is not clear whether this refers to the CPL § 440.10 motion that later was the basis for Petitioner's October 12, 2018 letter motion, or if it refers to a different potential motion that has not otherwise been brought to the attention of the Court.  As of the filing of Respondent's memorandum of law in opposition to the Petition, the Rockland County Clerk had advised Respondent that Petitioner had not filed any CPL § 440 motion in connection with his underlying state court conviction.  *See* Resp. Mem. in Opp'n at 10 n.2.  There has been no notice to the Court from Petitioner about any other CPL § 440.10 motion other than the October 12, 2018 letter motion.

2011);[7] *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985) (finding that because a habeas petitioner "used the wrong procedural vehicle, the state courts never had a fair opportunity to pass on his claim").  Petitioner has not done so here.  Though Petitioner did pursue a direct appeal of his judgment of conviction, the Appellate Division decision rejecting that appeal made clear that if Petitioner wanted to pursue the claims raised in that appeal—the same claims he seeks to raise in this federal proceeding—he first needed to raise those claims via a § 440.10 motion, which enables the state court to develop an evidentiary record.  Despite that instruction, Plaintiff still has not taken the necessary action in state court.  Because a § 440.10 motion may be brought "[a]t any time after the entry of a judgment," N.Y. Crim. Proc. Law § 440.10(1), Petitioner may still fairly present both claims raised in the Petition to the state courts.  *See Harris v. Phillips,* 05-cv-2870 (RRM), 2013 WL 1290790, at *6 (E.D.N.Y. Mar.28, 2013) ("There is no time limit on bringing a § 440.10 petition.").  Petitioner's claims thus remain unexhausted and not procedurally defaulted.  *See Alke v. Artus*, No. 12-cv-5977 (RRM), 2013 WL 4700828, at *2 (E.D.N.Y. Sept. 1, 2013) (noting that the petitioner's "claim for ineffective assistance of trial counsel is unexhausted and is not procedurally barred in state court since he may still pursue this claim in a *coram nobis* § 440.10 pleading to the trial court") (quotation marks omitted); *see also Montanez v. Tynon*, No. 18-cv-1766 (JPO), 2018 WL 6268221, at *5 (S.D.N.Y. Nov. 30, 2018) ("Petitioner has failed to properly exhaust his ineffectiveness claim by failing to file a section 440.10 motion.  But the claim is not procedurally defaulted because it could still be pursued in state court.") (citation omitted).

---

[7] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Petitioner along with this Report and Recommendation.

Where, as here, a habeas petition contains only unexhausted claims, "[c]ourts in this Circuit have routinely exercised one of two options: (a) dismiss for failure to exhaust, or (b) deny on the merits pursuant to § 2254(b)(2)." *Altheiser v. Tedford*, No. 21-cv-1083 (BKS), 2023 WL 2306136, at *9 (N.D.N.Y. Mar. 1, 2023) (cleaned up) (quoting *Polanco v. Ercole*, No. 06-cv-1721 (RMB) (DFE), 2007 WL 2192054, at *8 (S.D.N.Y. July 31, 2007)).  The Court declines to recommend the latter option, however, because "[i]t is clear that there is no basis to retain jurisdiction over a petition that contains only unexhausted claims." *Pantoja v. New York State Div. & Bd. of Parole*, No. 11-cv-9709 (CS) (PED), 2013 WL 866869, at *6 (S.D.N.Y. Jan. 10, 2013) (quotation marks omitted), *adopted by* 2013 WL 865905 (S.D.N.Y. Mar. 8, 2013); *see also, e.g., Baity v. McCary*, No. 02-cv-1817 (LAP) (AJP), 2002 WL 31433293, at *2 (S.D.N.Y. Oct. 31, 2002) ("[T]here is no logical reason or basis to retain jurisdiction over a habeas petition that is totally and facially defective as completely unexhausted."), *adopted by* No. 02-cv-1817, ECF No. 6 (Apr. 10. 2003).

Furthermore, courts confronted with habeas petitions asserting only unexhausted claims have declined to stay the proceedings to allow petitioners to exhaust their claims in state court so as to avoid turning the federal court into a "jurisdictional parking lot for unexhausted claims and undermin[ing] the comity interests promoted by the exhaustion requirement." *Pantoja*, 2013 WL 866869, at *6 (quotation marks omitted); *Baity*, 2002 WL 31433293, at *2.  Under the circumstances, "[t]he appropriate disposition of this case is therefore dismissal without prejudice." *Pantoja*, 2013 WL 866869, at *7 (collecting cases); *see also*, *e.g.*, *Shomo v. Maher*, No. 04-cv-4149 (KMK), 2005 WL 743156, at *7 n.12 (S.D.N.Y. Mar. 31, 2005) ("[T]he dismissal ordered in this case is without prejudice to [the petitioner] to claim, if appropriate, that any subsequently filed petition would be timely as a matter of equity.") (citing *Rodriguez v.*

*Bennett*, 303 F.3d 435, 438-39 (2d Cir. 2002) and *Hust v. Costello*, 329 F. Supp. 2d 377, 380 (E.D.N.Y. 2004)).  Although any subsequent petition in this court may be time barred, the Court does not recommend dismissing the Petition with prejudice both because Petitioner could potentially be entitled to equitable tolling, and so as not to limit any state court remedies Petitioner may still be able to pursue.  *See Baity*, 2002 WL 31433293, at *3 n.4.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be DISMISSED WITHOUT PREJUDICE.  As the Petition presents no questions of substance for appellate review, I respectfully recommend that a certificate of probable cause should not issue.  *See Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90, 91 (2d Cir. 1979) (*per curiam*).  I further respectfully recommend that the Court certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any responses to such objections, shall be filed with the Clerk of Court with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** See *Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 787 F.3d 93, 102 (2d Cir. 2015).

Dated: June 29, 2023
White Plains, New York

Respectfully submitted,

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Report and Recommendation has been mailed to Petitioner by Chambers.

No objections to this Report and Recommendation (the "R&R") have been received, and accordingly I review it for clear error. See Lewis v. Zon, 573 F.Supp.2d 804, 811 (S.D.N.Y.2008); Nelson v. Smith, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985); Fed. R. Civ.P . 72 advisory committee's note (b).  Finding no error, clear or otherwise, I adopt the R&R as the decision of the Court.  The Petition is dismissed without prejudice.  Because jurists of reason would agree that Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  I certify pursuant to 28 U.S.C. 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for purposes of appeal.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

CATHY SEIBEL, U.S.D.J.     8/27/23